Before I begin, I would like to reserve one minute of my time for rebuttal. All right. Thank you, Your Honors. And may it please the Court, my name is Ichi Lai from the law firm of Brooks-Bauer, and I represent Spencer Pierce, the appellant in this case. This case presents a situation in which the District Court, in the context of the State's motion for summary judgment, has resolved disputed issues of whether the State had violated its affirmative duty under the Eighth Amendment to provide adequate medical care to its inmates. And it is our position that the District Court hadn't properly done so. And this position is the only one consistent with a settled law that genuine issues of material fact preclude summary judgment, and the only one consistent with the laws of this circuit that deliver indifference to serious medical needs. And our position also gives proper respect to the rights of pro se litigants. I will begin by addressing the issue of whether Mr. Pierce's finger injury presents a serious medical need. This Court, in the off-site of McGuckin v. Smith case, has provided an example that presents a serious medical need, and that is an injury in which a reasonable doctor or patient would find important and worthy of comment or treatment. And the record bill is undisputed on this aspect in the sense that a consensus of Mr. Pierce's treating physicians, including Dr. Long and Mr. Pierce, have found the finger injury to be important and worthy of comment and treatment. So let's assume you're right. How do you approach Dr. Long? How is he deliberately indifferent? What factual scenario can you tell us that would support that allegation against Dr. Long? Dr. Long is deliberately indifferent in this aspect because in November 2005, when Mr. Pierce first approached Dr. Long for assessment, and he indicated that surgery is an option, but at the same time, he indicated to Mr. Pierce his beliefs that prisoners should not have to receive free treatment under the prison environment. And for that reason, from November all the way up to December and later on to February, he has delayed any authorization for surgery. And on that basis, I submit to the Court that Dr. Long is deliberately indifferent. What evidence is there? I mean, you're talking about a belief, and that's sufficient to keep him in the soup, so to speak, just because of a belief that he had? I don't understand the nexus. Well, Your Honor, there is a nexus in the sense that although he did indicate on the record his beliefs against free medical care for prison inmates, and the circumstantial evidence in the record shows that there is a delay, actually not delay, flat-out rejection of any authorization for surgery afterwards. So there is an inference that he had a role in delaying any treatment for Mr. Pierce. It's kind of thin, though, isn't it? I mean, you know, I understand the summary judgment dynamics of all of this, but do you really need Dr. Long in here? I mean, is that really such an important part of what you're all about here? Well, Your Honor, although the inference is thin, ultimately that's an issue of the weight of the evidence, and that's for the trial court to decide. At this point, all the inferences on the record below must be viewed in the light most favorable to Mr. Pierce. But Dr. Long did recommend surgery, and they did give him, you know, apparently proper, you know, medical advice. Well, Your Honor, you are correct in the sense that ultimately in February of 2006 he did authorize surgery. But from the period from November and February, there is a delay of a few months. And this Court, in other cases, have penalties. And how is he responsible for that delay? He was responsible for the delay by not submitting a proper authorization form, presumably under the inference of the record below, for a surgery authorization for Mr. Pierce. But that go ahead. So he did not submit a form to authorize surgery? Did he withhold that form somehow? And I don't see any evidence of a tie-in here. Well, I may have misspoken, Your Honor. I meant that there is an inference below that he did not take the proper steps to ensure that there is a proper and prompt authorization for surgery for Mr. Pierce. And this is based on his statement to Mr. Pierce that prisoners should not have any medical care while they're in prison. That's not consistent. That's not consistent with his action. That inference is, I don't know if it's fairly raised, because if he believed that prisoners shouldn't get free care, one would think that he would not have filled the paperwork out at all, but he filled the paperwork out. So that inference I don't know is fairly supported by the actions that were taken by Dr. Long. Your Honor, you are correct in the sense that he did ultimately grant authorization. Our contention is that that process took much longer than need be. Once in awareness, once Dr. Long became aware of the need for surgery, he needs to take prompt action to ensure that Mr. Pierce does not suffer any unnecessary infliction of pain. Let me ask you this. Is there any evidence in the record to which you can point that shows how long it takes on average to get the recommendation through the system and how this compares to that average? Something like that might help your inference. Is there something there? Your Honor, unfortunately, there isn't. None of that inference is raised in the record below. The record is pretty sparse with respect to the aspect of the authorization for surgery. All we have on the record below is Dr. Long's statement and his personal belief against free medical care to Mr. Pierce. In conjunction with that, we do have a delay from November to around December and all the way up to February in which there's no actions taken to move this authorization forward. And with that, it does provide an inference, although the Court may view that as a thin inference, it does provide an inference that there is a deliberate indifference with respect to Dr. Long. It's not the Scoggins party in your case. You have other fish to fry, I suspect. Yes, Your Honor. And one of the primary fish to fry, as Your Honor pointed out, is the prison administrator's seizure of this prescribed medical tape and prescribed therapeutic rubber bands. And they do so despite their awareness of this valid prescription issued by Dr. Long, and they do so despite their knowledge of the validity of the prescription   in the medical records of Mr. Pierce, the treaty physician in Iowa. Let me ask you something about that. Where in the record is the prescription? Your Honor, the record for the prescription is through the grievances filed by Mr. Pierce in which he alerted the prison officials of this prescription for medical records in Iowa to Ely State Prison. Mr. Pierce has indicated to the officials at the time of the seizure of these items that he had a valid prescription for them, and they acknowledge that. Can you understand why the officials may not take the word of an inmate that there is a prescription, but insist on the medical records? Because an inmate can say he's prescribed morphine or any other of the drugs that it would be against the regulations to have. So why would that be deliberate indifference for the correctional officials to insist on a written prescription as opposed to the word of the inmate? Well, Your Honor, you're absolutely correct that we should never take a person's statement at their own words. They should do some due diligence. And that due diligence should have been done in this case because upon the awareness put forward by Mr. Pierce, and once the record came in, the doctors at Ely State Prison should have been apprised of this valid prescription. Nevertheless, in 2005, Dr. Long himself had prescribed medical tape. And from 2005 all the way up until he filed a complaint for the civil rights case, there has never been an instance where the officials have given that prescribed medical tape. Well, I thought the record reflected that the policy of the prison was that the tape had to be applied by medical providers at the prison. They didn't just give it to the inmate to apply himself. Is that – is my understanding of the record incorrect? Your recollection of the record is indeed correct. However, there is a caveat to that one. In the first prescription when the official gave him this medical tape, they only gave him a thin strip and over three days. And that's clearly against the orders of Dr. Long himself. So Mr. Pierce raised that concern. How do we know that? Because Mr. Pierce had indicated on the record in a grievance form that the tape is not enough to wrap around his pinky finger. Where's that in the record? It should be in the grievances filed by Mr. Pierce sometime around 2008. Where? Can you give us the record site? I do not have the exact site in front of me, Your Honor. I apologize for that. But the problem is then that's kind of a disagreement with the physician. The physician says this is all you need. He says I need more. That's not deliberate indifference to disagree with the physician regarding the level of treatment or how the treatment is administered, is it? Well, Your Honor, that's actually incorrect. The officials, not the medical officials, made that assessment themselves. Dr. Long only stated that medical tape should be given to bind the finger. And officials carried out that prescription incorrectly, which led to further harm for Mr. Pierce. But that's not deliberate indifference. If they are negligent or inadvertently fail to carry it out, you have to show they Well, Your Honor, it's not an issue of medical opinion indifference. Here, the medical opinion is that he should have medical tape. It didn't say how much. It didn't say how much, but it should be enough to bind the fingers together. And officials carried out this prescription incorrectly by providing medical tape that could not bind the finger. Nevertheless, ultimately, they took away this prescription in the end so that it never was medical tape prescribed to Mr. Pierce at all times to calm his pain. All right. Counsel, you've almost used your time. We'll give you a minute for rebuttal. And we do appreciate your participation in the pro bono project. Thank you, Your Honor. Thank you very much. Good morning, Your Honor. May it please the Court, Clark Leslie, Senior Deputy Attorney General from the State of Nevada. The questions that were posed by my honorable opponent, I think, do touch on the heart of this case. Judge Trott asked, how was Dr. Long indifferent? And I think that is the critical question in an Eighth Amendment matter. And the answer is he was not. The only indication of this so-called statement by him that he does not favor free medical treatment for inmates are in documents that were authored by the appellant himself. There is no other indication of that. And as I've shown to you in the Snow v. McDaniel case, he is quite willing to treatment for an individual inmate, including Mr. Snow, who received life-saving hundreds of thousands of dollars of treatment for his heart condition prior to the authorization for his bilateral arthroplasty, a hip replacement. So other than the self-serving comment of the inmate, we have no indication of this so-called inference that he had a bias. Well, it's almost impeached, too, by his written reports. He's consulted with other physicians. He's making all kinds of recommendations. He's doing x-rays. He's diagnosing. I mean, he's doing exactly what Pierce said he doesn't believe should be done. That's absolutely correct, Your Honor. All of his conduct would indicate that this was a competent, caring physician who, I would add, was independent of the prison system. He is a board-certified orthopedic surgeon who was called in from time to time. Now, what about Brackbill? How does he play out in this case? Brackbill was the director of nursing. He would have actual contact with Spencer Pierce from time to time. So other than his commitment to practice medicine and within the confines of being a nurse, he really had no further involvement. Well, let me ask you this question. Tell me whether I have the facts down correctly. On February 2, 2007, Dr. Long prescribed tape. That's correct. That's correct. There's no doubt about that. And, you know, Pierce had some real serious medical problems, obviously. They were thinking about surgery, amputation, all this type of history. He's not making this up out of the clear blue. And then I have here that on January 9, 2007, he actually filed a written grievance and allegedly Brackbill responded, quote, we don't give out tape at ESP. And Dr. Bannister agreed and approved that. Is that factually correct? That is correct, Your Honor. Judge Brack, there at the time, Ely was the only maximum security prison in Nevada. And they had a history of this inmate being both an escape artist and Well, aside from that, I mean, he could be the worst person in the world. But, you know, even the worst person in the world, you know, was not, you know, supposed to be treated with deliberate indifference. So I don't think we have to go into those dynamics. I understand he's the bad egg. He's a frequent filer and they have all this history. But that doesn't trump the fact that if he needed tape and they say we're not going to give it to you Excuse me for interrupting, but that is the point. Tape can be used to fashion a homemade weapon. This is a summary judgment, though. Right. I mean, we're going to make a determination as a matter of law that Brackville and Bannister were correct in saying we're not going to give you tape because there are security issues. In the meantime, he's supposed to subject the subject to abject pain, and when he needs the tape, there's no question he needs it. Well, there is a question that he needs it, and the Isn't that all for a jury to make these determinations? This is summary judgment. Not in this case, Your Honor, with respect, because the worst-case scenario that can be made out here is that the failure to provide the tape would be negligence or even gross negligence, but not deliberate indifference. That's because we know there were long periods of time And that determination can be made as a matter of summary judgment? Yes, because On this record, with all these alleged facts, there's a lot of stuff out here. Yes, because the reasonable inferences that can be drawn from the undisputed fact in the record indicate that there were long periods of time that Mr. Pierce had no pain whatsoever. This was an individual who was engaged in the very spirited sports of both handball and basketball in a prison context on a daily basis. The February 6th record that you referred to, Judge Black, indicates, excuse me, it was actually the date before It's Judge Block. I think I like Block better. I'll call you whatever you like, Your Honor. I thought it was your Brooklyn accent. Let me note that. The record indicates that there were strong, that there were considerable periods of time when he did not experience any problems with his finger. The record that you referred to, Judge, showed that he did not experience any significant pain at that time, and he was offered options to alleviate the problem, and this was the one thing that I wanted to say in oral argument, and I wish to stress it. He was given three options, but he taped the fingers, amputated the finger, or fused the bones. The only grievances and kites that he ever filed was for tape. And what's the significance of that? I don't want my fingers amputated. I just want to tape them. This is an individual who was not getting the tape that he wanted, and it would be reasonable to presume that he would take one of the other options. He had already gone through two certain Why is that reasonable to assume that you would opt for your fingers being fused together or amputation? Because he had already had two surgeries in Iowa and nothing was working, and if he wasn't getting tape and he was in such intractable pain, the reasonable inference is he would opt for treatment that would cure and relieve him from the problem. Well, but the way I see this case, maybe I'm mistaken, is that there are two things at play. He wants tape. In other words, give me a roll of tape and I'll tape myself. Now, that's not happening. Look, I've been in plenty of prisons. That is not happening. Right. But the other option is I just want these medical people to tape my fingers on a regular basis. And he was able to get that for a while. Why did that stop? Because Warden McDaniel felt that it was going to be a safety and security issue. Right or wrong? For the medical people to tape his fingers with a small piece of tape? Yes. Where does it say that Warden McDaniel regarded that as a security problem? In his declaration that he filed... In Warden McDaniel's? Yes. He comments on his concerns about the tape, his prior experiences with tape being used. But he was taped in Iowa, wasn't he? Yes, he was. Why was there not a security problem there? I don't know. You'd have to ask the Iowa penal system. Maybe that should be flushed out at a trial, don't you think? No, I don't think so. I think the trial judge got it right when he looked at all of the facts in this case and saw that there was no evidence to support a finding of deliberate indifference. Did Brackbill have in front of him the entire medical file, including Dr. Long's evaluation, when Brackbill said we don't give out tape? My experience with the nurse Brackbill is he would always have the record before him, before he would make a recommendation. So my response would be yes. So the way I read the grievance, though, the grievance is I want tape and they're able to put tape on my fingers and they're not doing that. Is that a fair reading of what this grievance is? That is a fair reading. And there are inconsistencies in the grievances. Sometimes he's asking for tape, sometimes he's saying would the medical department put the tape on me. But, again, we have the staff being made aware of the fact that he is playing handball and he is playing basketball, which indicates his complaints about pain, about discomfort, about nonuse. And where is that in the record, the handball and the basketball? The medical record indicates, and I'm not exactly sure where, that he injured his pectoral muscle lifting nearly over 400 pounds in Iowa, and then the medical records indicated that he came in for treatment to see Dr. Long after getting scrapes and bruises from playing handball and basketball. And I believe that's in the February 6th record or the November record previously. In November 2005, he tore his ligament again while getting down from his bunk bed, right? Yes, sir. Now, you're saying he played handball after that? He has and continues to play handball and basketball throughout his incarceration. With that hand? Maybe it's a different hand. I don't know. You can't play handball one-handed. Your opponent would simply hit the ball to the side of your neck. Well, Jim Abbott disproved that. Well, with baseball, not handball. Handball, you're bouncing a ball off a wall. You know, if you have one hand, you play handball with one hand. And you get beat. And basketball, theoretically, could be played with one hand. But, Your Honor, you've said that you've been in prisons and you've seen how rough it is. My time is up. Thank you very much, Your Honor. All right. In the nick of time. And thank you, Judge Block. One minute for rebuttal. Thank you, Your Honor. I'll keep this brief. Oh, that's okay because I have a couple of questions. Oh, all right. By all means. I'd like to first go over Dr. Long's personal beliefs against free medical care for the inmates. Granted that this was provided by Mr. Pierce himself in the declaration. But the declaration is still evidence. And this was not challenged in the district court below. So, therefore, it must be accepted as truth for the purpose of summary judgment. Now, whether it carries the day is an ultimate issue for the jury to decide. It's not proper for the jury. You know, there has to be a genuine issue of material fact. Yes, Your Honor. And this may be, as you put it, an issue of material fact. But I don't see how it can be genuine. I mean, the entire record impeaches this guy's claim. Dr. Long was heavily engaged in this person's problem. Consulting other physicians, talking to hand specialists. I mean, so it doesn't appear to me that this is a genuine issue. It's a manufactured one by your client. Well, Your Honor, that seems to go more along to the weight of the evidence rather than. . . It's not genuine anymore. I mean, that word is in there for a purpose. You are correct, Your Honor. And in an instance, it's not whether or not Dr. Long did or did not give him treatment. It's whether or not he took some delays in getting to that treatment phase of it. And the evidence shows that he has delayed any treatment of Mr. Pierce from November at least to December 2005. Okay. Let's go to Brackbill. The grievance, as I read it, is that I want tape and they won't give it to me. It's not that I need to be taped and the medical director won't tape me. Am I right about that? Yes, Your Honor, in the sense that he did initially ask for tape, but ultimately because of substantial pain, he just wants the pain to go away and he doesn't really care how he receives the tape. He even. . . So how is Brackbill deliberately indifferent? Explain that to me in terms of the facts that you're going to be able to show at a trial. Your Honor, based on the facts in the record below, Brackbill was involved because when he made the grievances, Brackbill takes no steps in making sure that he gets Mr. Pierce received tape in one form or another, whether or not it's by supervised taping or by possession to Mr. Pierce in taping it himself. And that's the. . . He went further than that. He says we're not going to give out tape in the ESP because we have security concerns. I mean, he actually said under no circumstances would you get tape. Am I reading that correctly? Your Honor, that is correct. He did say that, but the record also showed that they have provided tape to Mr. Pierce on other instances without any issues. So it does raise a tribal issue on the fact that why did they give tape at one point yet stop later on? How do you rope Bannister into this then? Bannister was involved because. . . He's the medical director, right? Yes, Your Honor. He was involved because he has received his grievances or has supervisory role over the grievances, yet again, he didn't take any affirmative action in making sure Mr. Pierce received the tape. He didn't take any affirmative action, but how do we know he was deliberately indifferent? He acted with a wanton state of mind. It sounds to me like all he did was sign off on somebody else's mistake, maybe, as you want to call it. Although he merely may have signed off on these mistakes, at the same time, as a supervisor, they have an affirmative duty to ensure that the inmates get proper medical care. If their subordinates did not give him that treatment, he needs to step in and provide that treatment. Let me shift gears. How were McDaniel and Skolnick deliberately indifferent? McDaniel was deliberately indifferent by putting forth this purported security concern of the medical tape, and that is why he . . . It's not purported. I mean, have you ever been in a prison? I have not, Your Honor. I spend a lot of time in prisons, and I'm not taking judicial notice of anything, but let me tell you something. Tape is a problem. Your Honor, I agree. Tape will be a problem, security concern, but at the same time . . . That's the problem. Yes, Your Honor. They can be made weapons. So at the same time, why did they not have a supervisory taping by having a guard watch Mr. Pierce tape his finger and then confiscating the remainder? That was proposed as an alternative by Mr. Pierce, and he has never allowed that to happen. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Zell v. Holder. Thank you.
judges: Block, Trott, Rawlinson